419 F.2d 1097
 ATOMIC OIL COMPANY OF OKLAHOMA, INC., an Oklahoma corporation, and Frank Sweetin and Nadine Sweetin, his wife, Appellants,
v.
BARDAHL OIL COMPANY, a Missouri corporation; Bardahl Manufacturing Corporation, a Washington corporation; and Bardahl International Corporation, a Washington corporation, Appellees.
 No. 10175.
 United States Court of Appeals Tenth Circuit.
 December 30, 1969.
 Rehearing Denied February 4, 1970.
 
 Lawrence A. Johnson, of Farmer, Woolsey, Flippo & Bailey, Tulsa, Okl., for appellants.
 Robert O. Beresford, Seattle, Wash. (Beresford & Booth, Seattle, Wash., and Rheam & Noss, Tulsa, Okl., were on the brief), for appellees.
 Before MURRAH, Chief Judge, PICKETT, Senior Circuit Judge, and LEWIS, Circuit Judge.
 LEWIS, Circuit Judge.
 
 
 1
 Although this case presents many facets of argument, the basic appellate issue presented is whether a bond given as a condition precedent to the issuance of a temporary injunction under Fed.R. Civ.P. 65(c)[1] is supplemented or supplanted by a second bond issued as a premise to a permanent injunction in view of an ultimate appellate determination that the moving party, here Atomic, was entitled to no injunctive relief on the merits. The trial court allowed recovery to appellees, the various Bardahl corporations (Bardahl), to the full amount of both such bonds. We affirm, holding, among other things, that a temporary injunction may be wrongfully issued although its issuance may not have been improvident as an abusive exercise of the trial court's discretion.
 
 
 2
 The relevant facts may be summarized. In August of 1963, Atomic instituted suit in the United States District Court for the Northern District of Oklahoma against Bardahl based on an alleged trademark infringement by the latter corporation. The basis of the cause of action was the alleged illegality of Bardahl's marketing of a product called "Savoil" in light of Atomic's trademark of a similar product called "Savmotor." Atomic sought to recover damages and to permanently enjoin all future sales of "Savoil" under that trademark. The district court granted the prayer for a preliminary injunction which was operative in the 30 states in which both products were marketed and, as required by Fed.R.Civ.P. 65(c), ordered the plaintiff to post a $50,000 security bond. The court's order stated:
 
 
 3
 * * * [The] Plaintiff shall undertake and file in the Office of the Clerk of this Court a good and sufficient bond in the amount of $50,000.00 conditioned for payment of damages to the Defendants if it be determined by this Court or any other court of jurisdiction reviewing this Order, that said Temporary Injunction has been improperly granted and issued.
 
 
 4
 Atomic assigned a $50,000 savings account to the clerk of the court as security to satisfy this bond.[2] After the case was heard at trial in May 1964 the court granted a permanent injunction which enjoined the sale of the Bardahl product in three states, Texas, Oklahoma and Missouri. This injunction commanded the issuance of a new bond in the amount of $25,000[3] and required further that
 
 
 5
 * * * the $50,000 bond or undertaking in the sum of $50,000.00 heretofore posted by the Plaintiff as a condition precedent to the granting of the preliminary injunction herein be dissolved and the Court Clerk of the United States District Court for the Northern District of Oklahoma, Noble Hood, is hereby ordered and directed to return to Frank Sweetin and Nadyne Sweetin, * * * the passbook to Savings Account #18165 of the Farmers & Merchants State Bank, Tulsa, Oklahoma, and the Court further declares that the assignment of said passbook to the said $50,000.00 Savings Account is hereby set aside, discharged and held for naught.
 
 
 6
 Both parties appealed to this court from the judgment and order granting the permanent injunction, Atomic asserting that it should have been awarded damages and Bardahl contesting the legal propriety of the issuance of the injunctive relief. In Bardahl Oil Co. v. Atomic Oil Co. of Oklahoma, 10 Cir., 351 F.2d 148, we reversed the judgment of the district court; the granting of injunctive relief was held to be based on a "clearly erroneous" finding.[4] Bardahl then initiated a collateral, independent action in the same federal district court, the result of which gave birth to the present appeal. Bardahl sought recovery on both of the bonds for the "costs and damages" which it incurred as a result of the erroneous issuance of the injunctions. The damages allegedly suffered were substantially greater than the aggregate amount of the injunctive bonds. Judgment was entered in favor of Bardahl for $75,000, the full amount of the two bonds and this appeal by Atomic followed.
 
 
 7
 Atomic first contends that recovery on the preliminary bond is precluded by the second order of the first trial court which established a permanent injunction and set aside the undertaking required as a condition of the preliminary injunction. Claiming comfort from the indisputable premise that the Federal Rules of Civil Procedure are not substantive rules and do not, therefore, mandate a change in federal case law, appellant cites the rule contained in Russell v. Farley, 105 U.S. 433, 26 L.Ed. 1060, as dispositive of the issue. The cited case holds that, when the security posted to satisfy a bond is no longer equitably required, the court which ordered the bond must have the power to release it and, having so done, no appellate jurisdiction exists to assess damages resulting from the litigation after the trial court refuses to do so. Therefore, the appellant reasons, the release of the $50,000 security in the instant case constituted a determination by that court that Bardahl was not equitably entitled to costs and damages under the preliminary bond. Claim is further made that this action was within the discretion of the trial court and cannot be upset either upon review or in an ancillary proceeding to enforce the liability established by the bond.
 
 
 8
 The rule set out in Russell v. Farley has been reiterated subsequent to the enactment of the Federal Rules of Civil Procedure,[5] even though the discretion of the trial court to refuse to award damages on an injunction bond in an appropriate case has been largely circumscribed since the existence of Rule 65(c) and its predecessor, 28 U.S.C. § 382.[6] Moreover, since the holding of Russell v. Farley was expressly predicated upon the absence of an applicable court rule or statute,[7] the presence of Rule 65(c) would seem to cast great doubt upon the continued viability of the Russell v. Farley rule in cases arising under the Federal Rules of Civil Procedure. The manifest purpose of Rule 65 (c), evidenced by its plain language, strongly contraindicates the proposition that the court which issues an injunction should have the power to foreclose recovery on the injunction bond, when such recovery devolves upon the substantive correctness of the determinations of the very same court. Rule 65(c) states in mandatory language that the giving of security is an absolute condition precedent to the issuance of a preliminary injunction. It imports no discretion to the trial court to mitigate or nullify that undertaking after the injunction has issued. It is obvious that to superimpose such a caveat on the rule would inevitably dilute the otherwise imperative application of the conditions set out in Rule 65(c), and would counteract against the interests meant to be protected by the rule. As the Supreme Court has stated, "[t]he award of an interlocutory injunction by courts of equity has never been regarded as strictly a matter of right, even though irreparable injury may otherwise result to the plaintiff. * * * [The court] will avoid * * * injury so far as may be, by attaching conditions to the award * * *." Yakus v. United States, 321 U.S. 414, 440, 64 S.Ct. 660, 674, 88 L.Ed. 834. "[I]t is the duty of a court of equity granting injunctive relief to do so upon conditions that will protect all * * * whose interests the injunction may affect." Inland Steel Co. v. United States, 306 U.S. 153, 157, 59 S.Ct. 415, 417, 83 L.Ed. 557.
 
 
 9
 Even in the absence of Rule 65 (c), Russell v. Farley could not be successfully applied to resolve the issue in this case. The court which issued the injunction in the first proceeding sought by its order only to dissolve the bond and release the security. At that point in the chronology of this litigation, neither party had raised the issue of damages on the injunction bond, nor does the order issued by the court reveal that it sought to adjudicate this issue on its own. The appellee states in its brief that it felt "the better alternative" would be to bring an independent action on the bonds, rather than raise the issue by motion at that stage in the proceedings.[8] The order of the injunction court releasing the security was plainly not a negation of damages under the bond. Russell v. Farley is therefore inapplicable: It held only that the trial court has discretion to refuse to assess damages by mitigating the terms of the bond. This rule is of no moment where, as here, the trial court has taken no action with respect to the liability established by the bond. Absent such a determination by the trial court, the potential liability created by the issuance of the preliminary injunction and the concomitant undertaking of the party seeking the injunction were extant at the time the enjoined party commenced its independent action for recovery. Accordingly, we must reject the appellant's contention that the injunction court's release of the security similarly released the appellant from its liability. Rule 65(c) creates a cause of action for the "costs and damages" incurred by the enjoined party should it later be determined that that party was "wrongfully enjoined or restrained," and the release of a money amount deposited to facilitate, and to establish the limits of, recovery cannot be held to foreclose the rights upon which that recovery is based, absent a determination by the injunction court that the right itself does not obtain in the particular case under consideration. Cf. International Ladies' Garment Workers' Union v. Donnelly Garment Co., 8 Cir., 147 F.2d 246.
 
 
 10
 The appellant next contends, citing numerous cases to support its proposition, that the granting of a preliminary injunction in a trademark infringement action can only be reviewed for an abuse of discretion by the issuing court. Therefore, the argument continues, there can be no recovery on the preliminary injunction bond unless and until it is determined that the issuance of the preliminary injunction in this case constituted such an abuse of discretion. Appellant notes that the appeal to this court taken from the final order decided only that the granting of the permanent injunction was "wrongful" and not that the trial court abused its discretion in the first instance. The appellant concludes that not only was the issue not decided by the appeal but that the doctrine of merger barred its determination in the collateral proceeding to enforce the bonds. Merger applies, the appellant argues, because Bardahl appealed only from the final order and thereby waived its right to contest the correctness of the preliminary injunction.
 
 
 11
 The flat premise of this argument is indisputably correct: Review of an order granting or denying a preliminary injunction is limited to determining whether the trial court abused its discretion. Continental Oil Co. v. Frontier Refining Co., 10 Cir., 338 F.2d 780. However, the merit of appellant's contention can go no further. The rule limiting the scope of review is designed to preclude review of an interlocutory order: It applies only to the direct appeal of an order granting or denying a preliminary injunction. See Continental Oil Co. v. Frontier Refining Co., supra; United States v. Brown, 10 Cir., 331 F.2d 362. The action seeking enforcement of the bonds was not a review of the injunction proceeding, but was, in its procedural context, collateral to but independent of the first action. The conditions precedent to recovery on the bonds were to be found within the order granting the temporary injunction insofar as it is consistent with Rule 65(c) and not derived from the wholly unrelated rules regulating the scope of review of restraining orders. In this case, the preliminary injunction order conditioned recovery upon a subsequent determination that the injunction was "improperly granted." Judicial determination of the bonds' applicable condition must probe the merits of the right to injunctive relief and not merely the trial court's discretion in providing temporary protective security.
 
 
 12
 The appellant's reliance on the doctrine of merger is equally misplaced. When appeals are made from both the temporary and permanent injunctions, it has indeed been held that the merger rule operates to divest the appellate court of jurisdiction over the appeal from the order granting or denying the temporary injunction.[9] However, in this case no appeal was taken by Bardahl from the order granting the temporary injunction. In any event, even if Bardahl had prosecuted such an appeal to this court the only possible relevance of the merger doctrine would have been to make the decision that the relief accorded to Atomic was "improper" equally applicable of the temporary and the permanent injunctions.
 
 
 13
 The fact that this court in the previous appeal did not expressly pass on the question of the legality of the granting of the preliminary injunction does not support the appellant's further, implicit argument that no court of competent jurisdiction has declared wrongful the granting of the preliminary injunction, thus fulfilling the conditions precedent to recovery on the bond. The reduction by the first trial court of the territorial application of the preliminary injunction from 30 states to three states when the permanent injunction was granted constituted a determination that, as applied to the 27 states not covered by the final order, the preliminary injunction was improper in scope. And generally, for the purpose of establishing liability on an injunction bond, a decree dismissing a bill in equity constitutes a judicial determination that a temporary injunction should not have been granted. Renaud Sales Co. v. Davis, 1 Cir., 104 F.2d 683.[10]
 
 
 14
 We conclude that this court's adjudication that Atomic was entitled to no injunctive relief on appeal on the merits of the permanent injunction, an injunction of lesser scope than the temporary injunction, necessarily determines that the granting of the temporary injunction was improper and served to activate the conditions of both bonds. Such rule is applicable even though the substantive criteria to be applied by a trial court in entertaining a prayer for a preliminary and a permanent injunction are somewhat different.[11]
 
 
 15
 Finally, appellant asserts that the judgment reflects items of damage not contemplated as "costs and damages" within the meaning of Rule 65(c). Specific complaint is made of evidence received for advertising expenses incurred by Bardahl for its product "Savoil" befort the issuance of any injunction. Pre-injunction expenses were not allowed, however, as an item of damage but were considered by the trial court only as one evidentiary factor probing loss of profits directly attributable to the economic force of these injunctions. The amount of the judgment, properly allocated between the two injunctive periods, was determined by damages ascertainable from a definite business sales history and, as we have earlier indicated, were proven to exist in amount far in excess of the judgment.
 
 
 16
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 Rule 65(c) of the Federal Rules of Civil Procedure provides as follows:
 No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained. No such security shall be required of the United States or of an officer or agency thereof.
 
 
 [2]
 The assignment of the $50,000 savings account pursuant to the court's order stated that the clerk was:
 To have and to hold the same, as security to the above-named defendants, if it should be adjudged that said defendants by reason of the preliminary injunction granted herein on the 4th of October, 1963, be adjudged to have been issued without sufficient cause, and that the same be wrongful.
 
 
 [3]
 The appellant states that "another assignment in the manner of a bond or undertaking was made as security for the permanent injunction * * * in the sum of $25,000, which bond is still in full force and effect."
 
 
 [4]
 This court held in full that
 * * * Atomic's marks were merely descriptive; that the proof did not establish they had acquired a secondary meaning in Missouri, Oklahoma, Texas, or elsewhere; and that the finding of the trial court that the marks had acquired a secondary meaning in such states was clearly erroneous. 351 F.2d at 151.
 
 
 [5]
 See Steinberg v. American Bantam Car Co., 3 Cir., 173 F.2d 179, 181.
 
 
 [6]
 For example, Public Service Commission v. Brashear Freight Lines, Inc., 312 U.S. 621, 61 S.Ct. 784, 85 L.Ed. 1083, a suit by numerous common carriers to enjoin the enforcement of an allegedly unconstitutional state statute, held that the refusal of the trial court to entertain the enjoined parties' motion to assess damages under the injunction bond was an improper exercise of discretion since that refusal relegated the claimants on the bond to the inexcusable remedy of a multiplicity of law suits in which it would be impossible to apportion the damages among the many responsible parties
 
 
 [7]
 The Supreme Court states in its opinion that the rule established by the case was premised on the fact that
 * * * [N]o Act of Congress, or rule of this court, has ever been passed or adopted on this subject. The Courts of the United States, therefore, must still be governed in the matter by the general principles and usages of equity. 105 U.S. at 441.
 
 
 [8]
 Rule 65(c) has been construed to contemplate both methods of recovery. Russell v. Farley and subsequent cases approved the procedure of seeking judgment by motion in the injunction court and this procedure has continued under Rule 65(c) which states, "His [the surety's] liability may be enforced on motion without the necessity of an independent action." However, the rule has not been interpreted to preclude such an independent action. Such procedure was allowed prior to the amendment of the rule in 1946 which provided for judgment by motion,see Future Fashions v. American Surety Co., D.C., 58 F.Supp. 36, and this mode of enforcement continues in effect under Rule 65(c).
 
 
 [9]
 An order granting or denying an interlocutory or preliminary injunction is merged in a decree granting or denying a permanent injunction and when both orders are appealed from, the former will be dismissed. Peterson v. Brotherhood of Locomotive Firemen and Enginemen, 7 Cir., 268 F.2d 567
 
 
 [10]
 See also Wood, Wire & Metal Lathers, International Local No. 216 v. Brown & Root, Inc., D.C., 157 F.Supp. 342; United States v. Berger, 66 F.Supp. 950, 11 Alaska 137.
 
 
 [11]
 As this court stated in Continental Oil Co. v. Frontier Refining Co.,supra,
 The function of a preliminary injunction is to preserve the status quo pending a final determination of the rights of the parties. It should be issued only where the plaintiff makes out a prima facie case showing a reasonable probability that he will ultimately be entitled to the relief sought and that irreparable damage will possibly result if the relief is not granted pendente lite. But, it has been said that: "* * * To justify a temporary injunction it is not necessary that the plaintiff's right to a final decision, after a trial, be absolutely certain, wholly without doubt; if the other elements are present (i. e., the balance of hardships tips decidedly toward plaintiff), it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation." 338 F.2d at 781 (footnotes omitted).
 On the other hand, a permanent injunction is ordinarily issued after a full trial on the merits at which all of these elements have been resolved in favor of the plaintiff. See Chappell & Co. v. Frankel, 2 Cir., 367 F.2d 197, 203.