**L'ENFANT PLAZA PROPERTIES, INC.,**
a District of Columbia Corporation,
Appellant,

v.

**FITNESS SYSTEMS, INC., a Maryland
Corporation, Appellee.**

No. 9452.

District of Columbia Court of Appeals.

Argued Oct. 16, 1975.

Decided March 25, 1976.

Ernest Gene Reeves, Washington, D.C., for appellant. Daggett H. Howard, Washington, D.C., was on the reply brief, for appellant.

Barnett Rosenberg, with whom Peter J. Messitte, Chevy Chase, Md., was on the brief, for appellee.

Before KELLY, GALLAGHER and NEBEKER, Associate Judges.

KELLY, Associate Judge:

On December 18, 1973, appellant (hereinafter L'Enfant), appellee (hereinafter Fitness), and Waterside Health Club, Inc. (hereinafter Waterside),[1] entered into an agreement to establish and to operate for a period of five years a unique physical fitness center at the L'Enfant Plaza complex. Basically, the agreement was that L'Enfant was to provide the premises and finance the center; Fitness was to supervise the day-to-day operation of the center; and Waterside was to purchase specialized cardiac stress testing equipment for use in connection with the facility.[2]

The center eventually opened in July 1974, without the stress testing equipment, and from the start did not generate the revenues projected in the management agreement. The minimum projected gross income for fiscal 1975 was $319,000; however, for the first seven months of that year the actual gross income was about $8,700. The projected net income for the same period was $83,960, but the first seven months of operation resulted in a loss of $90,751. Because of this unprofitable beginning, L'Enfant notified Fitness by letter dated February 19, 1975 that it was terminating the agreement between them. L'Enfant cited the failure to procure the cardiac stress testing equipment and the center's failure to reach the minimum projected gross and net income levels as breaches or anticipatory breaches of the agreement, under the terms of which, if such defaults or breaches continued for fifteen days, L'Enfant had the option to terminate the agreement. Exercising this option, the termination was to be effective five days after the running of the fifteen-day default period, approximately March 11.

On March 6, Fitness filed a petition for a temporary restraining order, preliminary injunction, permanent injunction and declaratory relief. Primarily, Fitness sought specific performance of the agreement until the trial on the merits. Alternatively, it asked the court to enjoin L'Enfant from operating the fitness center itself; to have L'Enfant account for all monies received from the operation of the center; to enjoin L'Enfant from using the name "L'Enfant Plaza Fitness Center" or any similar name for any business purpose; and to enjoin L'Enfant from using the current membership list of or to seek new members of the center. Fitness also asked for damages totaling $129,000 based on a promised management fee. Finally, Fitness asserted that it would suffer irreparable damage to its goodwill and would be exposed to a multiplicity of lawsuits from current members if the injunctive relief were not granted.

On the afternoon of March 6, a temporary restraining order was issued which required L'Enfant to keep the center open and to allow Fitness to operate it until the hearing on the preliminary injunction set for March 17. Fitness was required to post a $2,500 bond. The temporary restraining order was extended at the request of both parties until March 19 and on that date a

---

1. Waterside was named as a codefendant in the original suit filed by L'Enfant. The trial judge dismissed it as a party to the proceedings on the preliminary injunction but not as a party to the trial on the merits.

2. The uniqueness of the fitness center was to be the cardiac stress testing equipment. The center planned to employ a physician to administer the test, to evaluate the results, and to provide a supervised program of exercise for members of the health center.

two-day hearing commenced on the request for a preliminary injunction.

On March 28, the trial judge issued an opinion and order which noted that L'Enfant was losing $500 per day while the center remained open; that its losses had already exceeded $100,000; that the contract breaches alleged by L'Enfant in its letter of termination were substantial and serious; that the breaches counter-alleged by Fitness were insubstantial, outside the agreement, or moot; and that the likelihood that Fitnsess would prevail on the merits was small. The court stated that if a preliminary injunction was not granted, Fitness would suffer unspecified serious consequences because L'Enfant would force it to cease operations. Conversely, however, the court stated that if the injunction were granted, L'Enfant would be forced to bear a $10,000 per month loss until trial on the merits. Additionally, the court found that "[T]he agreement is clearly a business agreement designed to set up a profitable venture; the judicial award of money damages should be an adequate remedy for breach of it." On the assertion that irreparable harm would flow from a multiplicity of lawsuits if the center were closed, the court stated "that all these risks are foreseeable consequences of a business venture which fails and are not irreparable if [Fitness] succeeds in proving that the failure was caused by [L'Enfant]." For these reasons the court denied Fitness' request for a mandatory injunction requiring L'Enfant to keep the center open, operated by Fitness, until the trial on the merits.

The trial court, having denied Fitness' request for specific performance, nevertheless granted Fitness' alternative request for a preliminary injunction to protect its interest in the name L'Enfant Plaza Fitness Center, in the operation of the center, and in the center's membership lists. It ruled that these were protectable interests and that a protective preliminary injunction would impose only a minor burden on L'Enfant. Consequently, L'Enfant was enjoined from the use of the name L'Enfant Plaza Fitness Center or any similar name, from operating or contracting with another to operate the fitness center, and from using membership lists of the center.

I

L'Enfant contends here that the trial judge's reasons for denying specific performance are equally applicable to the injunctive relief ultimately granted and, therefore, the injunction must be dissolved. Specifically, L'Enfant argues that the finding that Fitness is unlikely to succeed on the merits applies to all issues raised by Fitness and not just to the issue of specific performance. L'Enfant also contends that Fitness made no showing of irreparable harm by L'Enfant's continued operation of the center and by its use of the words "L'Enfant Plaza" in conjunction with the words that would describe a physical fitness center. Lastly, it argues that the injunction, by forcing it to close the center until trial on the merits, imposes on it a financial burden which is totally disproportionate to the benefit conferred on Fitness, i.e., protecting any proprietary interest that Fitness may have in the name and operation of the center.[3]

■■ In considering L'Enfant's contentions we bear in mind that we review only the exercise of the trial court's discretion. As we stated in *Wieck v. Sterenbuch,* D. C.App., 350 A.2d 384, 387 (1976):

A proper exercise of discretion requires the trial court to consider whether the moving party has clearly demonstrated: (1) that there is a substantial likelihood he will prevail on the merits; (2) that

---

3. Pursuant to a motion made at oral argument, the record herein was remanded to the trial court for a ruling on a pending motion for summary judgment. The motion was subsequently denied and the record was returned to this court for disposition of this appeal.

he is in danger of suffering irreparable harm during the pendency of the action; (3) that more harm will result to him from the denial of the injunction than will result to the defendant from its grant; and, in appropriate cases, (4) that the public interest will not be disserved by the issuance of the requested order. [Footnote omitted.][4]

An examination of the record in this case reveals that while the trial judge applied these equitable standards to the facts, the conclusion that Fitness' alternative request for injunctive relief should be granted is wholly inconsistent with the concomitant ruling denying specific performance of the management agreement. The record is devoid of facts which support a conclusion that Fitness is likely to succeed in a suit to protect what the trial court itself termed "evanescent" interests in the name of the center, in its operation, and in its membership lists. Indeed, the trial court specifically refused to classify these interests as property rights or to determine to whom the interests belonged. Likewise, the record does not support a finding that such interests, if they exist at all, will be irreparably harmed absent injunctive relief. And finally, there is no support for the trial court's determination that enjoining L'Enfant from operating the center or contracting with others to do so imposes on it only a minor burden. By closing the center until trial, the court has prevented L'Enfant from recovering any of its initial investment, estimated to be $180,000. More importantly, we are unable to discern how Fitness' interest in the name of the center, in its operation, and in the membership lists is protected by an order which ceases all operation of the center, for if such interests required equitable action, the best and proper remedy would surely be to keep the center in operation.[5] Since the trial court correctly denied such relief, there is no logical reason to issue an injunction of lesser scope which patently injures a definite economic interest of L'Enfant while providing slight protection to Fitness' corresponding "evanescent" interests. We conclude, therefore, that no preliminary injunction should have been issued.[6]

II

■ Although our disposition renders moot a collateral issue raised by L'Enfant, *viz,* the failure to require Fitness to post a bond as a prerequisite to issuing the injunction, we nonetheless comment briefly on the security requirement of Super.Ct. Civ.R. 65(c), which provides:

No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained. No such security shall be required of the United States or of the District of Columbia, or of an officer or agency of either.

The provisions of Rule 65.1 apply to a surety upon a bond or undertaking under this rule.

---

4. The trial court correctly ruled that the public interest would not be effected by either the grant or denial of the injunction, and we, therefore, limit our discussion to the first three requirements.

5. By refusing to enjoin L'Enfant from enforcing the management agreement by exercising its option to terminate it and at the same time enjoining L'Enfant from contracting with others to operate the center, the court has caused the facility to stand idle pending trial, thus guaranteeing the utmost economic loss to all parties.

6. L'Enfant attempts to sever various portions of the injunction for purposes of appeal, *i. e.,* it does not specifically object to the proscription against use of the exact name "L'Enfant Plaza Fitness Center" or to the restrictions on use of the membership lists. However, as there is no equitable basis at all for injunctive relief, we reverse the judgment in its entirety.

The trial judge did not require a bond and the record does not contain any reasons for this inaction. While the security requirement is phrased in mandatory terms, the exact amount of security is left to the trial court's discretion. Whether this discretion enables a judge to dispense with the requirement of security is an unsettled question which we do not resolve here. Courts have dissolved injunctions for the failure, *inter alia*, to require a bond, *see, e. g., Telex Corporation v. International Business Machines Corp.*, 464 F.2d 1025 (8th Cir. 1972), but other courts have held that if there is no risk of monetary loss to the party enjoined, then security is not required, *see, e. g., International Controls Corp. v. Vesco*, 490 F.2d 1334, 1356 (2d Cir.), *cert. denied*, 417 U.S. 932, 94 S.Ct. 2644, 41 L.Ed.2d 236 (1974).[7] However if in a rare case a trial court in the exercise of its discretion wishes to dispense with the security requirement, it is imperative that it state its reasons for so doing.[8]

### III

 Lastly, we consider L'Enfant's contention that the trial court erred by returning to Fitness the $2,500 bond which Fitness was required to post before the issuance of the temporary restraining order. L'Enfant alleges that as a result of the wrongfully issued restraining order it allowed Fitness to operate the center for five days beyond the original termination date of March 11. During this five-day period, L'Enfant claims daily losses of $500 occasioned by the restraining order. Whatever the merits of L'Enfant's claim, however, there is no indication in the record that L'Enfant asked the trial court to assess such damages. Super.Ct.Civ.R. 65.1 provides in pertinent part that:

Security: Proceedings
Against Sureties

Whenever these rules require or permit the giving of security by a party, and security is given in the form of a bond or stipulation or other undertaking with one or more sureties, each surety submits himself to the jurisdiction of the court and irrevocably appoints the clerk of the court as his agent upon whom any papers affecting his liability on the bond or undertaking may be served. *His liability may be enforced on motion without the necessity of an independent action.* . . . [Emphasis added.]

Rule 65.1 is permissive and does not preclude an independant action to recover damages. The fact that the security was returned does not prevent the recovery of damages in an independent action for as was stated in *Atomic Oil Co. of Oklahoma, Inc. v. Bardahl Oil Co.*, 419 F.2d 1097, 1101 (10th Cir. 1969), *cert. denied*, 397 U. S. 1063, 90 S.Ct. 1500, 25 L.Ed.2d 685 (1970):

Rule 65(c) creates a cause of action for the "costs and damages" incurred by the

---

7. *See generally* 11 Wright and Miller, Federal Practice and Procedure: Civil § 2954 (1973).

8. The rationale for requiring a bond was stated by the Supreme Court in *Russell v. Farley*, 105 U.S. 433, 438, 26 L.Ed. 1060 (1882).

It is a settled rule of the court of chancery, in acting on applications for injunctions to regard the comparative injury which would be sustained by the defendant, if an injunction were granted, and by the complainant, if it were refused. . . . And if the legal right is doubtful, either in point of law or of fact, the court is always reluctant to take a course which may

result in material injury to either party; for the damage arising from the act of the court itself is *damnum absque injuria*, for which there is no redress except a decree for the costs of the suit, or, in a proper case, an action for malicious prosecution. To remedy this difficulty, the court, in the exercise of its discretion, frequently resorts to the expedient of imposing terms and conditions upon the party at whose instance it proposes to act. The power to impose such conditions is founded upon and arises from the discretion which the court has in such cases, to grant or not to grant the injunction applied for. It is a power inherent in the court, as a court of equity, and has been exercised from time immemorial. . . .

enjoined party should it later be determined that that party was "wrongfully enjoined or restrained," and the release of a money amount deposited to facilitate, and to establish the limits of, recovery cannot be held to foreclose the rights upon which that recovery is based, absent a determination by the injunction court that the right itself does not obtain in the particular case under consideration.
. . .

As the trial court has not adjudicated the issue of damages either on motion or by independent action, we are without jurisdiction to review that issue.

*Reversed with directions that the preliminary injunction be dissolved.*