Jasen, J.
The controversy arises from a contract to publish the official law reports — New York, Appellate Division, Miscellaneous — of the State of New York.
In November, 1970, the State Reporter, with the approval of the then Chief Judge; awarded a five-year contract to the *502 Lawyers Co-operative Publishing Company. The Williams Press, Inc., publisher of the reports since 1898 and the unsuccessful bidder in 1970, refused to yield the list of subscribers and certain materials necessary to publication and distribution. The State Reporter, with the approval of the then Chief Judge, annulled the contract because of the possibility of disruption in publication. The State Reporter’s action was ultimately sustained in the courts on the ground that his decision was not subject to judicial review. (Matter of Lawyers Co-op. Pub. Co. v. Flavin, 69 Misc 2d 493, affd. 39 A D 2d 616, mot. for lv. to app. den. 30 N Y 2d 488.)
This proceeding ensued in January, 1971, an interim agreement having been reached by the State Reporter and Williams for publication of the official reports pending resolution of the issues raised. Nominally a proceeding in article 78 challenging the validity of the Lawyers Co-operative contract, it has been treated by the parties and the courts as one for declaratory relief.
The nub of the controversy concerns the subscription list in which Williams claims a property interest. Specifically, the claim is that should there be a change in the. publisher, Williams is entitled to commissions or discounts oh renewals of subscriptions placed directly with it during its tenure as contractor-publisher. This right, it is alleged, is confirmed by the language df Williams’ post-1956 publishing contracts with the State Reporter. Additionally, the petition seeks a declaration of rights with respect to a provision in the 1971-1975 contract regarding the publication of the Session Laws advance sheets. Williams, who for some years had published the Session Laws advance sheets in addition to the official reports, was required by its contract to furnish such advance sheets to subscribers of the official reports at nó additional cost. Lawyers Co-operative, as a bidder on the annulled 1971-1975 contract, was exempted from a similar requirement. This, it is said, discriminated illegally against Williams and a declaratory judgment is asked with respect to the inclusion of such provisions in the new contract to be prepared for rebidding.
Special Term adjudged that the list of subscribers to the official reports was the property of the State and that Williams *503 had no contractual right to renewal commissions or discounts on subscriptions originally placed with it. But it was further adjudged that Williams, as transferee of subscriptions placed with “ law book dealers ”, was entitled to receive commissions on annual renewals of those subscriptions. The court declined to adjudicate the issue respecting the Session Laws advance sheets, terming it hypothetical only. The Appellate Division, with an opinion, unanimously affirmed and we granted leave to appeal to consider the important policy questions raised.
Official law reporting in New York has long been a matter of State concern. The history, which often tracks changes in the court system, begins in 1804 when the Legislature empowered the then Supreme Court of Judicature to appoint a reporter of decisions.[1] As it developed, the official reporter published not only the decisions of the Supreme Court of Judicature, a court of general as well as appellate jurisdiction, but also the decisions of the Court for the Trial of Impeachments and the Correction of Errors, then the State’s highest court. In 1814, the official reporter commenced publishing the decisions of the Chancery Court as well, until, in 1825, appointment of a separate Reporter for Chancery decisions was authorized.
In 1846, major constitutional changes in the court system were made and the Court for the Trial of Impeachments and the Correction of Errors was abolished. The Court of Appeals, precursor of the present court, was created as the State’s highest appellate tribunal. Pursuant to constitutional authorization (N. Y. Const., 1846, art. VI, § 22), publication of the present series of New York reports was begun under the supervision of a reporter of decisions, denominated the State Reporter and appointed by the executive branch. (L. 1847, ch. 280.) By statute, distribution of the reports to State agencies was augmented (L. 1847, ch. 280, §§ 73, 74) and an interstate report exchange plan was initiated (L. 1847, ch. 277). Interestingly, the Legislature saw fit to regulate the selling price of the volumes as well. By statute (L. 1848, ch. 224), the price was fixed at a *504 rate not to exceed $3 for a 500-page volume.[2] With regard to the Supreme Court, its composition and jurisdiction were substantially changed and no provision was made for official reporting of its decisions.
The 1869 Judiciary Amendment to the Constitution effected further changes in the judicial system with corresponding consequences for official law reporting. The Court of Appeals was reorganized and express constitutional provision for a reporter of decisions, to be appointed by the court, was made. (N. Y. Const., 1869 Arndt., art. VI, § 2.) Four General Terms of the Supreme Court, forerunners of the present Appellate Division in the State’s four judicial departments, were created and provision was made for official reporting of the decisions of the court by a Supreme. Court Reporter. (N. Y. Const., 1869 Arndt., art, VI, § 23.) Pursuant to statute (L. 1869, ch. 99), this second official reporter was appointed by the executive and publication of the Supreme Court’s decisions at General Term was begun. Once again, the Legislature interceded to regulate the selling price per volume and the number of volumes to be published each year (L. 1869, ch. 99):
In 1892, pursuant to statute (L. 1892, eh. 598), the Office of Miscellaneous Reporter was created. An executive appointee, the Miscellaneous Reporter was charged with reporting the decisions of all courts of record, except the Court of Appeals and the General Terms of the Supreme Court. With provision for official reporting of all courts of first instance, an obvious void in the coverage of the official series was filled and the State’s official law reports assumed the basic tripartite structure which has been maintained basically unchanged.
With adoption of the Constitution of 1894, the present Appellate Division of the Supreme Court was created. Provision was. made for an official reporter who retained the title of Supreme Court Reporter and was to be appointed by the Appellate Division. (N. Y. Const., 1894, art. VI, § 2.) The Supreme Court Reports of decisions at General Term were discontinued and the *505 present series of Appellate Division Reports began. The Court of Appeals retained the power of appointment and removal over its reporter (art. VI, § 7) and provision was made for legislative regulation of the reporting of court decisions (art. VI, § 21).
In 1924, the office of Miscellaneous Reporter was abolished and its functions were transferred to the Supreme Court Reporter. By amendments to the Judiciary Article of the Constitution, approved in 1925, the framework was laid for the present structure of official law reporting. Provision was made for the creation by the Legislature of a State Law Reporting Bureau to be headed by a State Reporter, appointed by the Court of Appeals and responsible for reporting the decisions and opinions of all the State’s courts. Not until 1938, however, was this constitutional authority exercised. In that year, by statute (L. 1938, ch. 494), the offices and duties of the State Reporter and the Supreme Court Reporter were merged and the present Law Reporting Bureau was established. The tripartite division of the official reports — New York, Appellate Division and Miscellaneous — was continued under the aegis of the State Reporter and the Law Reporting Bureau. With only minor changes, the 1938 statutory scheme remains in effect today.
This chronology of official law reporting in New York has been reviewed in some detail for it is of more than mere historical interest. In our judgment, it reflects the State’s deep and abiding concern that the decisions of its courts be authoritatively and expeditiously reported, published and distributed.
Today, this high responsibility reposes in the State Law Reporting Bureau under the direction and control of the State Reporter. (Judiciary Law, § 431.) Printing and publication of the official reports, no less than the preparation of headnotes, fact summaries, points of counsel, indexes and tables, are his responsibility. (§§ 433, 433-a.) To accomplish these tasks, he is empowered to enter into contracts, subject to the approval of the Chief Judge, for the printing and publication of the reports on terms and with conditions deemed by him to be most advantageous to the public and the State (§ 434, subd. 4). Similarly, and again subject to the Chief Judge’s approval, he may annul any printing and publication contract when in his sole judgment the public interest so requires (§ 434, isubd. 12). It is against this background and the public nature of the tasks *506 performed by the publisher for the State Reporter that the claimed property interest. in the list of subscribers must be assayed.
There is more. Since the beginning, the official law reports have had a special status. Today, and for some time, it has been statutorily required that New York decisions be cited to the courts of this State from the official reports. (CPLR 5529, subd. [e].) The courts themselves ás a rule cite only to the official reports of New York decisions. Also, the official series contains the State Reporter’s headnotes and syllabuses, not to be found in unofficial reporters, and which in point of fact are copyrighted for the benefit of the People of the State. (Judiciary Law, § 488.) Although, unlike some, jurisdictions, the. head-notes and syllabuses lack the imprimatur of the court, they too have a special character as the product of the State Reporter and his deputies whose professional qualifications are statutorily prescribed (,§ 435).
It follows that because of the special and favored status of the official reports, special benefits inure to the publisher and printer. While there are private unofficial reporters, the publisher of the official reports enjoys a kind of exclusive franchise conferred by the State. Also, the publisher is the direct beneficiary of the State-created incentives to subscribe to the official series.
In sum, considering the State’s substantial interest in official law reporting, the public nature of the tasks performed by the publisher for the State Reporter, the special status of the official reports and the direct benefits inuring to the publisher as a kind of exclusive franchisee, the claim to a property interest in the list of subscribers is without legal foundation and is, as a matter of policy, simply untenable. Nor, for much the same reasons, do the trade secret cases aid the petitioner’s point of view. (See, generally, Customer List — As Trade Secret — Factors Ann., 28 ALR 3d 7.) Indeed, no case has been called to our attention recognizing an exclusive property right in a subscription list under circumstances so interwoven with the public interest.
Petitioner’s other points for reversal have been carefully considered and little need be added to what has already been written at Special Term and the Appellate Division. In sum, we cannot agree with the pivotal contention that Williams’ previous *507 contracts providing for commissions and discounts to “ lawbook dealers ” on subscription renewals confirm its property right in the subscription list. We see no escape from the. conclusion that for purposes of commissions and discounts,. Williams is not a “ law book dealer ” within the meaning of the contract provisions which, it seems to us, clearly delineate between the contractor-publisher and 11 law book dealers Regarding the issue of the Session Laws advance sheets, we agree that the question is hypothetical only and that the request for declaratory relief with respect to provision therefor in future contracts was properly declined.
Accordingly, the order of the Appellate Division should be affirmed.
Judges Gabbielli, Jones, Wachtleb, Rabin and Stevens concur; Chief Judge Bbeitel taking no part.
Order affirmed, with costs.

. There is an important article detailing the history of official law reporting in New York — Moore, One Hundred Fifty Years of Official Law Reporting and the Courts in New York (6 Syracuse L. Rev. 273).

. Over the years, the Legislature continued to oversee the price of the official reports, sometimes with deleterious consequences. (See Moore, One Hundred Fifty Years of Official Law Reporting and the Courts in New York (6 Syracuse L. Rev. 273, 300-302.)