AMERICAN WELDING & ENGINEERING COMPANY, INC., Appellant, v. LUEBKE and others, Respondents.

*January 5—January 30, 1968.*

698

700

For the appellant there was a brief by *Lichtsinn, Dede, Anderson & Ryan* of Milwaukee, and oral argument by *Eldred Dede.*

For the respondents there was a brief by *Foley, Sammond & Lardner,* attorneys, and *David E. Beckwith* and *Maurice J. McSweeney* of counsel, all of Milwaukee, and oral argument by *Mr. McSweeney.*

CONNOR T. HANSEN, J. We are of the opinion that the decision of this court in *Abbott Laboratories v. Norse Chemical Corp.* (1967), 33 Wis. 2d 445, 147 N. W. 2d 529, is decisive of the issue in the case presently under consideration. We are also appreciative of the fact that *Abbott, supra,* was a case of first impression in Wisconsin, and that the decision was rendered subsequent to that of the trial court in the instant case and therefore not available to either the trial court or counsel.

The issues presented in *Abbott, supra,* were twofold: (1) Technology of the production process of a synthetic sweetener, and (2) customer lists and information, and in that case it was held neither constituted a trade secret. The case now before us concerns only customer lists and information. In *Abbott, supra,* we stated that the Restatement of the Law correctly states the general law of trade secrets.[1]

"An exact definition of a trade secret is not possible. Some factors to be considered in determining whether given information is one's trade secret are: (1) the extent to which the information is known outside of his business; (2) the extent to which it is known by employees and others involved in his business; (3) the extent of measures taken by him to guard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended by him in developing the information; (6) the

---

[1] Restatement, 4 *Torts,* p. 5, sec. 757.

ease or difficulty with which the information could be properly acquired or duplicated by others." Restatement, 4 *Torts*, p. 6, sec. 757.

In considering the matter of customer lists in *Abbott, supra,* page 467, the court stated:

"Customer lists are on the periphery of the law of unfair competition, because legal protection does not provide as much incentive to compile lists and because most are developed in the normal course of business anyway."

" '. . . Written customer lists generally have been regarded as trade secrets when the nature of the industry permits the list to be kept secret and the list cannot readily be duplicated by independent means. The size of the list and the type of information it contains about the customers may be relevant to the latter determination, as may the amount of time and effort which went into its composition.' "

Further, when determining the customer list was not a trade secret this court held, *Abbott, supra,* page 465:

"The customer lists taken by Mueller were not complicated marketing data which had been laboriously compiled by Abbott. These cards contained only the names and addresses of the customers and the individual to be contacted. There was no complicated marketing data concerning projected market needs of the customer or the customer's market habits."

An examination of the record and an inspection of the card file that Luebke took with him, based upon the standards hereinabove set forth, leads to but one conclusion. The cards and the information contained thereon are definitely not trade secrets.

It has been previously mentioned that Luebke brought much of this information with him when he commenced employment with the plaintiff. Also, the cards do not contain information concerning the particular types of orders of plaintiff's customers; special methods of fabrication utilized to fill orders; the costs of fabrication; past

or future profits involved in such orders; the methods which particular customers use in their operations; the value of repeat business; the type of order or terms thereof; bidding factors; customer standards or specifications; or the potential of the individual accounts.

In general, the cards contain the name, address and telephone number of the customer, sometimes the names of a number of persons employed by the firm, the position which the various individuals held in the firm and occasionally what apparently is the person's most commonly used first name. Most any person possessing Luebke's experience, contacts and knowledge of the industry, could have compiled a similar file, without undue difficulty, by recalling his past experiences and by reference to telephone and trade manual directories. Many of the cards listed only the customer's name, address and telephone number. Some of them contained obsolete information.

There are two other significant factors. Gene Shorey, a former salesman for the plaintiff, had a very similar file and was permitted to take it with him when he left the plaintiff's employment. Also, Luebke testified he did not make copies of the cards and offered to give them to the plaintiff to avoid litigation, which offer was refused.

While the record demonstrates that the defendant corporation did some $108,000 worth of business with customers of the plaintiff, it also reveals that the entire business of the plaintiff continued to grow; that a substantial backlog of orders existed; that the work force increased; and that plaintiff was frequently advertising for additional help.

Therefore, we conclude the record does not disclose that any trade secrets are involved in the issue before the court; that the limited permanent injunction issued by the trial court was not proper; and that the defendants should not be restrained generally from contacting the customers of the plaintiff.

As a result of our decision, it becomes unnecessary to consider the issue raised by the respondents as to taxation of costs by the trial court because the taxation of costs falls with the injunction.

*By the Court.*—Judgment reversed.