GARY VAN ZEELAND TALENT, INC., Appellant, V. SANDAS, Respondent.

*No. 76–029. Submitted on briefs May 3, 1978.—
Decided June 30, 1978.*
(Also reported in 267 N.W.2d 242.)

For the appellant the cause was submitted on the briefs of *Andrew O. Riteris, K. Thor Lundgren,* and *Michael, Best & Friedrich,* attorneys, of Milwaukee, and *Irving G. Curry III, McCarty, Curry, Wydeven* and *Peeters & Riester,* of Kaukauna, of counsel.

For the respondent the cause was submitted on the brief of *Thomas J. Janssen* and *Figman, Shiff, Janssen* and *Voesch* of Appleton.

HEFFERNAN, J. The appeal is from a summary judgment which dismissed the complaint of Gary Van Zeeland Talent, Inc., against its former employee, Edwin J. Sandas. Van Zeeland is a talent booking agency. Its principal business is placing musical groups in nightclubs and other places of entertainment.

Sandas, who had no previous experience in talent agency work, became an employee of Van Zeeland in 1972. Van Zeeland trained him in the methods of working with musical groups and clubs and the importance of matching musical talent to the needs of a club. Sandas was, however, a former band musician, and he was familiar with the procedures of booking bands through agents.

Sandas left the employment of Van Zeeland in 1975. Prior to the time he did so, he made copies of his employer's club or "customer" list. He admitted that he took the list because he was planning to start his own business in competition with Van Zeeland Talent, Inc. Shortly after termination of his employment, he commenced his own talent agency.

Van Zeeland commenced an action alleging that Sandas, through the use of the "private, secret and confidential customer lists, compilations and information . . . interfered with plaintiff's business . . . and has continuously solicited, invited and urged plaintiff's customers to cease doing business with the plaintiff and to become his customers . . . ."

The complaint demanded that the defendant surrender the customer list, account for any business and profits that he had derived from transactions with the customers on the plaintiff's customer list, and be restrained from any future disclosure of the list or information. The plaintiff also asks for an order enjoining any future solicitation of plaintiff's customers and for damages as the result of Sandas' use of the customer list.

The essential cause of action asserted by Van Zeeland is for the theft of a trade secret. It is argued that the customer list was a trade secret.

Following the answer denying the principal allegations of the complaint, Sandas moved for summary judgment and accompanied that motion with an affidavit which averred that the information in the customer list was obtainable from telephone directories, trade publications, newspaper advertisements, musician unions' records, and brochures and publicly distributed lists prepared by the Van Zeeland agency, in essence showing facts that tended to demonstrate that the information in the list was readily obtainable and, hence, not a trade secret.

Although the record contains no pleadings in opposition to the motion for summary judgment and no counter-affidavits, the trial judge's opinion reflects the fact that the plaintiff did not contest the facts set forth in the defendant's affidavit in support of summary judgment, but rather took the position that, under those facts, summary judgment in favor of the defendant should be denied as a matter of law. There is also evidence in the record and also in the opinion of the trial judge that the parties accepted as a verity testimony contained in various pretrial depositions. In effect, then, the motion for summary judgment was decided as a matter of law on an agreed set of facts. Neither of the parties contend that any disputed facts need to be resolved by trial.

The trial judge ordered summary judgment for the defendant after concluding that the customer list did not constitute a trade secret. He also held that the portion of the complaint which, arguably at least, could be construed to state a cause of action for the misappropriation of the time and effort of Van Zeeland in preparing the customer list must also fail, because only a "trade secret" could be misappropriated.

Van Zeeland has appealed from the judgment dismissing its complaint, and on this appeal again asserts that

the customer list was a trade secret. Alternatively, if it is not a trade secret, it argues the misappropriation of its time and effort by the taking of the customer list.

We conclude that, under the undisputed facts relied upon by the trial court, summary judgment was appropriately granted as a matter of law. We affirm.

We conclude that the customer list was not a trade secret. The list which Sandas took was prepared for the sole purpose of assuring that Christmas cards were sent to all Van Zeeland's customers. Because it did not contain street addresses, it was not used for actual mailing purposes, but only for the purpose of determining that Christmas cards had been sent to the customers on the list. It contained no street addresses, no telephone numbers, no business information in respect to the type of music preferred by the customer, no names of managers or owners, and no other information of any kind other than the club name, the city, and the state.

Van Zeeland kept far more extensive information about its customers than was contained in the list taken by Sandas. It kept billing records, the names of bands placed with various clubs, the dates of engagements, the individuals with whom the placements were made, the club name, the prices, the commissions, and credit information.

The defendant's affidavit in support of the motion for summary judgment established that it would be possible to compile or prepare a list like the one taken by Sandas from other sources. It was equally undisputed that it would take time and effort to prepare such a list.

Van Zeeland acknowledged that it would be relatively simple to prepare a customer list—the names of the clubs—in comparison to the more difficult task of matching appropriate talent with those clubs. There is no assertion that any list which matched bands with customers was taken. Van Zeeland admitted that a list of

customers without detailed information about club preferences would be relatively useless.

Immediately after Sandas left Van Zeeland, he commenced a competing talent agency business. It is undisputed that, during the second month following the commencement of his own business, 80 percent of the telephone calls made by Sandas in placing bands were to clubs listed on the document taken from Van Zeeland.

Additionally, it is undisputed that, at the time that Sandas joined Van Zeeland, he signed an employment agreement which, among other provisions, contained the following:

"7. *Disclosure of information.* The Employee recognizes and acknowledges that the list of the Employer's customers, as it may exist from time to time, is a valuable, special, and unique asset of the Employer's business. The Employee will not, during or after the term of his employment, disclose the list of the Employer's customers or any part thereof to any person, firm, corporation, association, or other entity for any reason or purpose whatsoever. In the event of a breach or threatened breach by the Employee of the provisions of this paragraph, the Employer shall be entitled to an injunction restraining the Employee from disclosing, in whole or in part, the list of the Employer's customers, or from rendering any services to any person, firm, corporation, association, or other entity to whom such list, in whole or in part, has been disclosed or is threatened to be disclosed. Nothing herein shall be construed as prohibiting the Employer from pursuing any other remedies available to the Employer for such breach or threatened breach, including the recovery of damages from the Employee."

Under these undisputed facts, then, the initial question is whether the customer list taken by Sandas was a trade secret entitled to legal protection.

Customer lists, in some circumstances, may be protected as trade secrets. Restatement of Torts, sec. 757, comment b at 5 (1939), defines a trade secret:

"A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it."

The comment goes on to state that a trade secret generally relates to the production of goods, such as a machine or a formula for the production of an article. A trade secret is not always so restricted; and, as the comment states, it may include "a list of specialized customers."

It is apparent, therefore, that a customer list *per se* does not fall squarely within the category of trade secrets. It is impossible to say generically that all customer lists are so protected. Rather, it is apparent that the general rule is that customer lists are not protected, and it is in the unusual case that such lists will be afforded the status of a trade secret. The difficulty in making this determination is capsulized in Alexander, *Commercial Torts*, sec. 3.4, p. 216 (1973), when he states:

"Perhaps more than any other area of trade-secret law, customer lists present problems of extreme commercial importance and of a close balancing of the interest of the employer and employee."

The balancing of interests is dependent, to a large degree, upon the philosophical approach of a court to the concept of restraint of trade. The enforcement of a concept that one may not use trade secrets can only be justified as an unusual exception to the common law policy against restraint of trade.

It is apparent that what Van Zeeland seeks in this action is the restraint of competition, and it seeks to prevent Sandas from offering similar services to cus-

tomers on the list which have previously been afforded musical booking services by Van Zeeland. The question basically, then, is whether such special protection contrary to the old and well established concepts of the common law should be afforded to Van Zeeland under the circumstances of this case. See, Restatement (Second) of Contracts, at 102 (Tent. Draft No. 12, 1977).

A general statement of the relevant balancing factors which may be applied in determining whether a customer list should be protected under the trade secrets concept is contained in *Developments in the Law—Competitive Torts,* 77 Harv. L. Rev. 888, 955–56 (1964):

"The use of customer lists and contacts by ex-employees stands on the periphery of trade secret law. Written customer lists generally have been regarded as trade secrets when the nature of the industry permits the list to be kept secret and the list cannot readily be duplicated by independent means. The size of the list and the type of information it contains about the customers may be relevant to the latter determination, as may the amount of time and effort which went into its composition.

"Some economic considerations militate against protecting customer lists. Most are developed in the normal course of business and probably would be produced whether or not protected. The customer benefits from their promulgation, for more firms then compete for his order. Also, once someone has discovered a customer with particular preferences, it is wasted effort for other firms to have to discover him again. Incentive to compile lists may be strengthened by legal protection in a few cases; and without protection businesses will guard lists more closely, with resulting inefficiency and diversion of resources into industrial security. However, economic arguments for protecting customer lists are at best marginal and the case for protection rests almost entirely on the need to deter employee disloyalty." (footnotes omitted)

The philosophical position of this court has been set forth in two recent cases, *Abbott Laboratories v. Norse*

*Chemical Corp.,* 33 Wis.2d 445, 147 N.W.2d 529 (1967), and *American Welding & Engineering Co., Inc. v. Luebke,* 37 Wis.2d 697, 155 N.W.2d 576, 28 A.L.R.3d 1 (1968). In both *Abbott* and *American Welding,* we considered the six factors mentioned in Restatement of Torts, sec. 757, comment b at 6 (1939), as being relevant in determining whether the material sought to be protected is a trade secret. That comment states:

"Some factors to be considered in determining whether given information is one's trade secret are: (1) the extent to which the information is known outside of his business; (2) the extent to which it is known by employees and others involved in his business; (3) the extent of measures taken by him to guard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended by him in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others."

If the material is not a trade secret under those considerations or others that this court deems relevant, the rules that the plaintiff urges should be applied in the protection of trade secrets are immaterial.

In applying those general standards in *Abbott,* we held that the customer list was not a trade secret. The list there consisted of the names and addresses of customers and, in addition, the name of the key individual to be contacted at the customer's establishment. We rested the conclusion that the list was not a trade secret upon the fact that the bare bones listing of customers contained no complicated marketing data which attempted to project the marketing needs of a customer or the customer's marketing habits.

It is apparent that this rationale of *Abbott* would mandate that the Van Zeeland customer list is even less deserving of protection. The Van Zeeland list was com-

pletely silent in respect to key personnel to be contacted and failed even to include street addresses. There was, indeed, complicated marketing data which was compiled by Van Zeeland which was included in its ordinary business records, which reflected the musical placements with individual customers, the individual dealt with, and the credit record of the customer. There is nothing in the record, however, to show that any attempt was made to keep this information secret, and such information was not taken by Sandas.

In *Abbott*, we pointed out that a customer list for artificial sweeteners was a matter of common knowledge and was available through trade journals throughout the industry. In the instant case, the evidence revealed that the customers for musical entertainment could be located easily through telephone directories, calls to chambers of commerce, and newspaper advertising. It is quite apparent then that the information contained on the list was readily available to anyone within or without the Van Zeeland business who wished to go through the routine of making inquiries from established sources. No special knowledge or expertise was required to gather this information. Moreover, the information on the list was only of marginal value to anyone. Van Zeeland's own testimony acknowledged that information merely in respect to the names and locations of the clubs was insufficient. Van Zeeland's testimony was capsulized in the plaintiff counsel's synopsis of testimony, "One must know the nature of each particular club with whom one deals. I procure this information by calling clubs."

It is apparent that the type of information which Van Zeeland considered important could not be contained in any listing or summary of club names and state and city addresses.

*American Welding* followed the rationale of *Abbott.* In that case, also, this court found the customer list

not to be a trade secret. There was evidence in *American Welding* to show that the employee in question brought at least a portion of the list to his work and, in addition, there was evidence to show that another employee had been permitted to take the customer list with him when he left *American Welding*. Nevertheless, *American Welding* based a portion of its rationale on the fact that the customer list did not contain particularized information. We said in *American Welding* at 702–03:

". . . the cards do not contain information concerning the particular types of orders of plaintiff's customers; special methods of fabrication utilized to fill orders; the costs of fabrication; past or future profits involved in such orders; the methods which particular customers use in their operations; the value of repeat business; the type of order or terms thereof; bidding factors; customer standards or specifications; or the potential of the individual accounts."

While *American Welding* was a manufacturing company and the customer information would obviously be of a different character, it is apparent that bare bones customer lists, under *American Welding,* will not be afforded the status of trade secrets. In addition, the court pointed out the ease with which the list could be compiled by anyone having the experience of the departing employee. The court stated at 703:

"Most any person possessing Luebke's experience, contacts and knowledge of the industry, could have compiled a similar file without undue difficulty, by recalling his past experiences and by reference to telephone and trade manual directories. Many of the cards listed only the customer's name, address and telephone number."

The same thing could have been done by Sandas in the present case. The list was readily reproducible. The tenor of the Van Zeeland brief on this appeal reveals that

much of Van Zeeland's concern is not over the utility of the customer list to Sandas or over the deprivation of the exclusive use of that list by Van Zeeland, but rather the concern that Sandas, in the course of his employment, had acquired such expertise and know-how in the placement of musical groups as to make him a significant competitor. Much of the Van Zeeland brief is concerned with the fact that Sandas came to Van Zeeland as a twenty-one-year-old impoverished cookware salesman but has now left the organization after having been trained by Van Zeeland to such an extent that he is an expert in talent placement. The law, however, does not protect against that type of unfairness, if unfairness it be. Rather, it encourages the mobility of workers; and so long as a departing employee takes with him no more than his experience and intellectual development that has ensued while being trained by another, and no trade secrets or processes are wrongfully appropriated, the law affords no recourse. *Abbott, supra,* 33 Wis.2d at 463; Annot., 28 A.L.R.3d 7, sec. 4 (1969).

Another facet of this court's rationale in *Abbott* has been urged here by Van Zeeland. In *Abbott,* we referred to the route-nonroute customer distinction. We pointed out there:

"A nonroute customer is one whose demand varies, and who is likely to purchase from several suppliers. Courts have been less prone to give relief in this area because there is no particular relationship developed between a customer and a salesman which is enduring. Thus, a contact of a customer by a former employee is not as unfair as in the area of a route salesman whom customers know and have come to depend on." (at 467)

Van Zeeland has attempted to liken Sandas' situation to one in which a salesman who has served a route takes over the furnishing of goods or services on his own behalf, rather than on behalf of his former employer.

■■■

Despite the urgings of Van Zeeland on this appeal, it is apparent that the trial court correctly found that, to the extent the route-nonroute distinction is at all applicable here, the customers of Van Zeeland were of the nonroute type. The evidence is clear that none of the customers on the list was dependent exclusively upon Van Zeeland for booking services. All of the clubs relied on numerous booking agents, and none of the clubs had any special or contractual relationship with Van Zeeland.

The typical and classical case of a route customer is the relationship between a householder and a milk delivery salesman. In that situation, the householder, during the course of the relationship, typically buys exclusively from the particular salesman; and it is assumed that, therefore, a special personal relationship will develop which will continue even though the salesman should commence his own enterprise or switch employers.

Van Zeeland nevertheless attempts to liken the situation here to that of a route customer because, it argues, the particular agent dealing with the clubs has developed a personal drawing power which may be exercised to the detriment of his former employer.

■

There are indeed types of professions or occupations which may be considered to be covered by the route sales rationale even though they are not route salesmen in the accepted milkman's sense. Included in this category are such persons as dentists, doctors, lawyers, and accountants. *See, Trade Secrets, Customer Contacts and the Employer-Employee Relationship,* 37 Ind. L.J. 218, 230 (1961-62). What makes them fit the category as route sales persons is the fact that the customer or consumer of their services typically does not purchase from several suppliers. That rationale, however, does not conform to the indisputable facts of the instant case. It is apparent that the clubs were completely independent of the agents

and did not rely on any one talent agency exclusively, but rather relied on whatever suppliers filled their need at the moment.

In addition, the record indicates that Sandas was but one of 10 or 12 agents employed by Van Zeeland, and the facts show that a single agent only had contacts with approximately 125–150 of the clubs on the customer list.

We accordingly conclude, applying the general standards. developed in *Abbott* and *American Welding* and the basic considerations of the Restatement of Torts, sec. 757, that the Van Zeeland customer list did not constitute a trade secret. The information on the list was known outside the Van Zeeland business and the list could be readily reproduced. The information was available to all the employees of the firm, and much of the information that was available was far more pertinent to matching clubs with talent than the skeletal customer list. As we have stated, Van Zeeland himself conceded that the information on the customer list in itself had little value, because the information there did not enable the matching of talent to the needs of a particular entertainment facility. The customer list was not a trade secret and was not entitled to legal protection on that basis.

Van Zeeland further contends that Sandas is estopped from denying that the club list is a trade secret, because, at the time of his employment, he signed an agreement which included paragraph 7, set forth in full *supra*. That portion of the agreement embodies the phrase:

"The Employee recognizes and acknowledges that the list of the Employer's customers, as it may exist from time to time, is a valuable, special, and unique asset of the Employer's business."

As a matter of public policy, we conclude that estoppel is not appropriate in a restraint-of-trade situation. As

stated above, it is the public policy of the common law that there be unrestrained competition to further the welfare of the consumer and society in general. Matters of trade practices or information in respect to manufacturing processes will be afforded the status of trade secrets only when to do so furthers public policy.

Restatement of Torts, in the introductory portions to sec. 757, discusses the rationale of trade secret protection, and it analogizes, to a degree, trade secrets to patents and copyrights. Matters will be given the status of trade secrets for the same reason that patents and copyrights are afforded special protection, because it is the public policy assumption that, by giving special protection to inventors, authors, and composers, an incentive will be afforded to creativity and that the benefits will inure to the general public. Basically, then, it is contrary to public policy to afford special protection to a restraint-of-trade mechanism where to do so does not give a special incentive for creativity that will inure to the benefit of the public at large. Accordingly, it is contrary to public policy to afford protection to material which is generated in the ordinary course of a business.

We said in *Abbott* that the customer list there was merely the outgrowth of its normal marketing endeavors and was nothing unique or confidential that should be protected in order to prevent competition. The above rationale is applicable to the instant case. While a declaration that the customer list is of value may have some persuasiveness in showing that the employer attempted to keep the list a secret, it is the public's right to have reasonable competition, irrespective of what self-serving declarations the employer may insist upon. Merely stating or having the employee acknowledge that a customer list is secret does not make it a trade secret entitled to be protected by the law in derogation of freedom of com-

merce and trade. It would be contrary to public policy to permit the doctrine of estoppel to be applied in this case.

We also point out that paragraph 7 in its entirety constitutes an unreasonable restraint of trade. That paragraph provides that the employee will never, without time limitation, disclose the list of customers to any person. Even were this customer list a trade secret, subject to protection within a reasonable geographic area and for a reasonable period of time, this provision, which sets no limits with respect to either, is unreasonable and void. The unreasonable strictures upon the right of disclosure vitiate the entire agreement in accordance with the legislative policy of sec. 103.465, Stats., which provides in part:

"Any such restrictive covenant imposing an unreasonable restraint is illegal, void and unenforceable even as to so much of the covenant or performance as would be a reasonable restraint."

An additional factor should be noted. Where a restraint of trade is tolerated, it is permitted only to the extent absolutely necessary to afford reasonable protection. As indicated above, restraints may be unreasonable by a limitation that is overbroad in terms of geographic area or time. A facet of the time limitation which must be considered in determining its reasonableness is the extent to which the information is permanently valuable to the employer. Restatement (Second) of Contracts, sec. 330, comment d at 115 (Tent. Draft No. 12, 1977), provides in part:

"And if the restraint is to last longer than is required in light of those interests, taking account of such factors as the permanent or transitory nature of technology and information, it is unreasonable."

Van Zeeland's customer list was at best of only transitory value. Like the customer list in *American Welding,* it was probably partially obsolete at the time it came into Sandas' possession. The information contained in the Van Zeeland customer list is now, less than three years after Sandas left the employment, already of greatly diminished value. Exhibit 3, incorporated in the record, lists 1200 clubs. Of the 30 clubs listed in Milwaukee, only 16 are currently listed in the Milwaukee telephone directory, and of the 23 listed in Madison, only 11 are currently listed in the Madison telephone directory. It is apparent that this information was of only transitory significance, and any covenant in an employment agreement wihch would restrain the disclosure of this information for all time is patently unreasonable.

We also point out the close scrutiny that restraint-of-trade restrictions in employment contracts must sustain if they are to pass legal muster as being reasonable. The argument put forth in the brief on this appeal exemplifies the very reason that such contracts are *prima facie* suspect. Counsel for Van Zeeland in his brief states:

"Would Sandas have obtained the job with Van Zeeland Talent, if he would have asserted his 'right' to Van Zeeland's club list at the time of hiring? Of course not!!"

Of course, no claim is made that Sandas did not have the right to a list of clubs during his employment. The issue is the post-employment restraint. Restatement of Contracts (Second), *supra,* comment g, at 119, states:

"Post-employment restraints are scrutinized with particular care because they are often the product of unequal bargaining power and because the employee is likely to give scant attention to the hardship he may later suffer through the loss of his livelihood."

The argument of Van Zeeland demonstrates the unequal bargaining power of Sandas and Van Zeeland at the time of hiring.

We take notice of paragraph 11 of the agreement which bound Sandas for a time period of five years and a radius of 300 miles from Van Zeeland's place of business not to operate or in any way be employed by or be connected with any business similar to Van Zeeland's. It is noteworthy also that, although Sandas' conduct clearly comes within the prohibitions of paragraph 11, no reliance is placed upon it. It is undoubtedly wise that Van Zeeland does not base its cause of action upon that restrictive covenant for, on its face, it appears to be an unreasonable restraint of trade. We call attention to paragraph 11 not because it poses a specific issue important in the decision of this appeal, but rather it demonstrates that the contract upon which Van Zeeland relies to estop Sandas is shot through with provisions that are contrary to public policy. Estoppel cannot be based upon a contract of that nature.

Van Zeeland asserts that, even if the customer list does not constitute a trade secret, nevertheless, it is protected by the misappropriation doctrine. The misappropriation doctrine was recently discussed in *Mercury Record Pronational News Service v. Associated Press,* 248 U.S. 215 163, 218 N.W.2d 705 (1974). Therein, referring to *International News Service v. Associated Press,* 248 U.S. 215 (1918), we said:

"The elements of the misappropriation cause of action developed in I.N.S. are: (1) time, labor, and money expended in the creation of the thing misappropriated; (2) competition; and (3) commercial damage to the plaintiff." (at 174)

The customer list was, indeed, physically taken or misappropriated without the consent of Van Zeeland. It is also undisputed that Sandas promptly thereafter went

into competition with Van Zeeland; and it is alleged and not disputed that Van Zeeland was commercially damaged by Sandas.[1] Nevertheless, we conclude that the misappropriation doctrine is not applicable to the taking of customer lists.

The only case cited for the proposition that the misappropriation doctrine applies to customer lists is *Boylston Coal Co. v. Rautenbush and Crowe,* 237 Ill. App. 550 (1925). That case, however, under no reasonable reading supports the position of Van Zeeland that *Boylston* was a case based on the misappropriation doctrine. That case involved a list of over 8,000 names, which had been winnowed from a total of 250,000 named agents. The court in *Boylston* held that it was a list of peculiar character and required more confidence and security protections than the ordinary list of customers. It said it was "in the nature of a trade or business secret." (at 558) Hence, the case upon which Van Zeeland relies was decided not under the misappropriation doctrine at all, but rather is one of the unusual cases where, because of unique facts and circumstances, a customer list constituted a trade secret.

The *I.N.S.* case is cited in *Boylston,* not for the application of the misappropriation doctrine, but rather for the boilerplate proposition that equity courts will protect property rights. *Boylston* is irrelevant to the application of the misappropriation doctrine to the present case.

We see no conceptual justification for extending the protection of the misappropriation doctrine to customer lists, and no reasonable justification has been urged by Van Zeeland. As we have noted above, relying upon *Abbott,* customer lists are at the very periphery of the law of unfair competition, because legal protection does not provide incentives to compile lists, because they are

---

[1] There is some evidence of record that would seem to indicate that Van Zeeland's business increased substantially subsequent to Sandas' departure.

developed in the normal course of business anyway. The entire rationale of providing protection to a customer list depends upon the basic philosophy that social welfare is enhanced by placing restraints on trade that will encourage the creativity by which processes and products will ultimately inure to the general welfare. While the prevention of employee disloyalty is a worthwhile social objective, because of the countervailing policy against restraint of trade, the loyalty of an employee will be enforced by law only under the unusual circumstance where a "trade secret" is involved. As set forth above and as noted in *Abbott* and *American Welding*, customer lists will be entitled to protection only in exceptional cases, because such protection would otherwise be contrary to public policy. It would be incongruous to depart from that public policy by the mere *ipsi dixit* of applying the skeletal requirements of the misappropriation doctrine. To do so in that context would defeat the very purposes of placing strict limitations on what will be protected as a trade secret.

It is also important to note that none of the cases which apply the misappropriation doctrine appear reasonable where a customer list is sought to be protected. For example, in *I.N.S.*, that news agency simply appropriated the Associated Press reports from early editions of newspapers and used them as its own. In *Mercury Record,* the original recording companies went to great expense to make quality recordings of its artists, but the pirate company simply made bootleg recordings and sold them as its own. In each case, misappropriation from the true owner gave the misappropriator the fruits of the final product that had resulted from the creator's costly and time-consuming news-gathering or artist-recording process. The effect in those cases upon the original creator of the product was immediate and direct. The misappropriation took a thing of great value from the organization that created the product.

While it may be that no sharp line can always be drawn between "direct" and "indirect" effect on the creator of the product, it is clear that the taking of a customer list has only an indirect effect. The list is far removed from the status of an end product. In the instant case, the list of customers, which was not unique and could be duplicated in the identical form from other sources, constituted only a feeble step in a competitive war against the original compiler of the list. Once the defendant Sandas secured the list, he was still obliged to solicit the customers and to match their tastes with the bands he could produce. He was obliged to produce the talent which could be placed in the clubs at the appropriate time. As we have said in this opinion, Van Zeeland himself acknowledged that merely securing the customer list was not sufficient, because it did not contain within itself all that was necessary to enable Sandas to forthwith place appropriate talent in the clubs listed.

It would appear that the misappropriation doctrine, even if it were applicable, would afford less protection to a customer list which was truly a trade secret than the trade-secret doctrine itself. For example, the route customer list may be protected because damage is more direct and imminent. In such cases the trade secret law provides ample protection, and the misappropriation doctrine is unnecessary.

We conclude that the misappropriation doctrine has no place in the protection of customer lists.

We conclude that the customer list in this case was not a trade secret, that as a matter of public policy Sandas is not estopped by the unreasonable employment contract to assert that the customer list is not a trade secret, and that the misappropriation doctrine is inapplicable. Summary judgment was properly granted.

*By the Court.*—Judgment affirmed.