**Verena RUESCH, Appellant,**

v.

**RUESCH INTERNATIONAL MONE-
TARY SERVICES, INC., Appellee.**

Nos. 82–764, 83–742.

District of Columbia Court of Appeals.

Argued Sept. 7, 1983.
Decided May 18, 1984.

Carlos M. Recio, Washington, D.C., with whom Patrick J. Moran and Karl W. Pilger, Washington, D.C., were on the brief, for appellant.

Collister Johnson, Jr., Washington, D.C., for appellee.

Before FERREN and TERRY, Associate Judges, and PAIR, Associate Judge, Retired.

TERRY, Associate Judge:

In this case we are confronted with a question of first impression in the District of Columbia: whether a list containing the names of potential customers is a trade secret entitled to equitable protection. We hold that the customer list here at issue was not a trade secret and that the trial court erred in granting appellee's motion for a preliminary injunction.

I

In 1980 appellant went to work for appellee Ruesch International, a newly formed corporation providing financial services in the field of foreign exchange and dealing in precious metals. Appellant became a member of the board of directors and as senior vice president was responsible for servicing and developing existing and prospective clients for the corporation. Before joining

Ruesch International, appellant had worked for Deak-Perera, another company providing similar services. Because of a restrictive covenant in her employment contract with Deak, appellant was not permitted to compete with it for two years after her departure. When she left Deak, however, appellant took with her a list of some of the clients with whom she had done business there (the "Deak list") and contacted them during her two-year hiatus, reassuring them that she would soon be back in business. Appellant brought the Deak list with her when she went to work for Ruesch International, where it became the nucleus of Ruesch International's initial client list.

After working for Ruesch International for two years, appellant resigned. She took with her a Rolodex card file which she kept on her desk containing the names of Ruesch International's travel agent clients. This file contained between 800 and 1000 names, including all the names on the Deak list.[1]

In the meantime, appellant's father founded Euro-Transfer, Inc., another new company providing foreign exchange services. Appellant became its president and sole employee. She solicited three of Ruesch International's clients, at least two of whom were also on the Deak list, and received $5,500 for her services. Five days later Ruesch International obtained a temporary restraining order which directed appellant to return the Rolodex file along with all other materials and documents taken by her, as well as restraining her from soliciting Ruesch International's clients or disclosing any information contained in those materials and documents. Ruesch International's motion for a preliminary injunction was subsequently granted.

## II

A trade secret has been authoritatively defined as "any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. It may be a formula for a chemical compound ... or a list of customers." 4 RESTATEMENT OF TORTS § 757, comment b, at 5 (1939).[2] In determining whether given information should be afforded trade secret protection, many courts have considered the six factors listed in the Restatement:

(1) [T]he extent to which the information is known outside of [the] business; (2) the extent to which it is known by employees and others involved in [the] business; (3) the extent of measures taken by [the employer] to guard the secrecy of the information; (4) the value of the information to [the employer] and to his competitors; (5) the amount of effort or money expended by [the employer] in developing the information; [and] (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Id.* at 6.

The cases are legion in which customer lists have "been held to be property in the nature of a 'trade secret' for which an employer is entitled to protection, inde-

---

1. The record is unclear as to the exact number of names on the Deak list. Appellant testified that there were 120, whi' another witness counted 329. One possible explanation for this discrepancy is that out of 329 prospective clients, appellant was able to bring in approximately 120 actual clients.

2. The drafters of the Second Restatement decided to omit those sections of the First Restatement dealing with unfair competition and trade practices, since in their view the law in these areas was "no more dependent upon Tort law than it [was] on many other general fields of the law and upon broad statutory developments, particularly at the federal level." RESTATEMENT (SECOND) OF TORTS, Division Nine, Introductory Note (1979). The definition of a trade secret in the First Restatement, however, continues to be widely accepted. *See, e.g., Kewanee Oil Co. v. Bicron Corp.,* 416 U.S. 470, 474, 94 S.Ct. 1879, 1882, 40 L.Ed.2d 315 (1974); *Public Citizen Health Research Group v. Food & Drug Administration,* 227 U.S.App.D.C. 151, 154, 704 F.2d 1280, 1283 (1983); *Ashland Oil, Inc. v. FTC,* 409 F.Supp. 297, 303 (D.D.C.), *aff'd,* 179 U.S.App. D.C. 22, 548 F.2d 977, (1976).

pendent of a non-disclosure contract, either under the law of agency or under the law of unfair trade practices." *Morgan's Home Equipment Corp. v. Martucci,* 390 Pa. 618, 623, 136 A.2d 838, 842 (1957) (footnote omitted); *see* Annot., 28 A.L.R.3d 7 (1969).[3] Equally true, however, is that the results vary from jurisdiction to jurisdiction, so that abundant authority may be found on either side of the issue. *See* 1 R. MILGRIM, TRADE SECRETS § 2.09[7], at 2–120 through 2–140 (1982). Nevertheless, as Milgrim points out:

> Although the results in different jurisdictions may be contrary to one another, some basic distinctions are usually considered. In the case of retail or route-customer lists, emphasis can be placed upon the nonavailability of an informative source which tends to divulge *likely prospects.* Thus, although almost every potential milk or laundry customer might be listed in the telephone book, all persons listed in the telephone book are not necessarily good customer prospects. With reference to lists of wholesale customers, however, a trade publication or a certain section(s) of the classified telephone directory may list a relatively limited number of potential purchasers, all of whom might be considered likely prospects. Thus, protection of customer lists might be more readily granted on a trade secret or analogous theory to certain types of retail customer lists than wholesale ones.

3. Under the RESTATEMENT (SECOND) OF AGENCY § 396(b) (1958), in the absence of an agreement to the contrary,

> [an agent] has a duty to the principal not to use or to disclose to third persons, on his own account or on account of others, in competition with the principal or to his injury, trade secrets, written lists of names, or other similar confidential matters given to him only for the principal's use or acquired by the agent in violation of duty. The agent is entitled to use general information concerning the method of business of the principal and the names of the customers retained in his memory, if not acquired in violation of his duty as agent ....

*See National Chemsearch Corp. v. Hanker,* 309 F.Supp. 1278 (D.D.C.1970); 4 RESTATEMENT OF TORTS § 757, comment c, at 8 (1939).

*Id.* at 2–121 (emphasis in original; footnote omitted). Keeping this distinction in mind, together with the factors listed in the Restatement, we examine the list at issue in this case.

### III

Otto J. Ruesch, president and chairman of the board of Ruesch International,[4] testified that out of the approximately 115,000 travel agents and tour operators solicited through mailing lists, trade shows, and other promotional activities by the company since its inception, the company has acquired 800 to 900 clients. In the process the company expended a minimum of $100,000. The Rolodex card file containing the names and addresses of these clients was kept by appellant, who was responsible for maintaining present clients and developing prospective ones, but it was also available to other employees. Besides the Rolodex file, the company maintained a "transaction book" which recorded the type of transaction performed for each client, together with the client's name, address, and telephone number.

Turning to the factors outlined in the Restatement, we first consider the extent to which the names and addresses of travel agents found in the Rolodex file were known outside of Ruesch International's offices. *See, e.g., American Institute of Chemical Engineers v. Reber-Friel Co.,* 682 F.2d 382, 387–388 (2d Cir.1982). The

In this regard, once a customer list is afforded trade secret protection, it is immaterial whether the list was taken or copied or whether it was memorized. *Velo-Bind, Inc. v. Scheck,* 485 F.Supp. 102, 107 (S.D.N.Y.1979); *Jet Spray Cooler, Inc. v. Crampton,* 361 Mass. 835, 840, 282 N.E.2d 921, 925 (1972); *Central Plastics Co. v. Goodson,* 537 P.2d 330, 334 (Okla.1975); *Morgan's Home Equipment Corp. v. Martucci, supra,* 390 Pa. at 624–625, 136 A.2d at 843; *J.L. Cooper & Co. v. Anchor Securities Co.,* 9 Wash.2d 45, 64, 113 P.2d 845, 854 (1941).

4. Otto Ruesch is not related to appellant Verena Ruesch.

record demonstrates that they came primarily from mailing lists and other publicly available sources.[5] With regard to the second and third factors, the availability of the file to other employees and the measures undertaken to guard the secrecy of its contents, the record shows that some of the cards contained in the Rolodex were prepared by employees of Ruesch International other than appellant as new customers were acquired. Otto Ruesch testified that "[i]f a new customer came in, a Rolodex card had to be made immediately and put into [appellant's] Rolodex, because that was the central focus point of the whole address keeping." Thus other employees had access to the names in the Rolodex, and it does not appear from the evidence that any measures were taken to ensure that the list was kept secret.

The fourth factor to consider is the value of the Rolodex customer list to Ruesch International. Mr. Ruesch testified that after two years of being in business, he expected that the company would break even or perhaps earn a slight profit in the near future. The revenue generated by doing business with the clients on the list was undoubtedly of some value to the company. However, the Rolodex file itself contained only a "bare bones listing of customers ... [with] no complicated marketing data which attempted to project the marketing needs of a customer or the customer's marketing habits." *Gary Van Zeeland Talent, Inc. v. Sandas,* 84 Wis.2d 202, 211, 267 N.W.2d 242, 247 (1978); *see Burroughs Corp. v. Cimakasky,* 346 F.Supp. 1398, 1400 (E.D.Pa.1972). Indeed, as Mr. Ruesch recognized, "the only way you get business [is] if you are more competitive with your rates, if you are better with the service." Even if the Rolodex list was of substantial value to Ruesch International

(as it may well have been), that fact would not entitle it to trade secret protection because, with a little time and effort, anyone knowledgeable in the business could compile such a list from commonly available sources.

This leads directly to our examination of the fifth Restatement factor, which is the amount of money and effort expended by Ruesch International in creating the Rolodex file. Ruesch International asserts that it spent a great deal of money to develop the lsit of names in the Rolodex file and places great reliance on this fact in arguing that appellant should not now have access to that list. Appellant responds by arguing in her brief that Ruesch International should not be permitted to "use its advertising budget to justify classifying the Rolodex file as a trade secret." We agree with appellant on this point.

■ The time and money which a business spends in building up a customer list is an important consideration in determining whether the list is entitled to trade secret protection. *See, e.g., American Loan Corp. v. California Commercial Corp.,* 211 Cal.App.2d 515, 27 Cal.Rptr. 243 (1963). However, when the prospective clients are commercially conspicuous, *see* Annot., *supra,* 28 A.L.R.3d at 42–44, courts have characterized the expenditure of time, money, and resources undertaken by businesses to acquire prospective clients as "simply widespread canvassing of an obvious and highly competitive market," *Leo Silfen, Inc. v. Cream,* 29 N.Y.2d 387, 394, 278 N.E.2d 636, 641, 328 N.Y.S.2d 423, 429 (1972), or "merely the outgrowth of ... normal marketing endeavors ...." *Gary Van Zeeland Talent, Inc. v. Sandas, supra,* 84 Wis.2d at 217, 267 N.W.2d at 250; *see Corroon & Black-Rutters & Roberts, Inc. v. Hosch,* 109 Wis.2d 290, 325 N.W.2d

---

**5.** There was testimony at the hearing on the motion for a preliminary injunction that a few of the Rolodex cards contained "spread" information. In our view, this information was not confidential. The so-called "spread" was nothing more than Ruesch International's standard commission for any given customer transaction,

which was determined by the price of foreign currency in the market and the amount of the transaction. Thus the commission charged, although it would vary from transaction to transaction, could be readily ascertained by anyone researching the market.

883 (1982). The same can be said about Ruesch International's expenditure of time and money in the creation of the Rolodex file. The names found in the file were culled from public sources, mostly mailing lists, in an effort to develop a market for a type of business which Otto Ruesch described as "very highly competitive." The Supreme Court of Wisconsin has said in response to a similar argument:

> [Plaintiff] argues that it spent substantial time and money on its customer list. In reality that time and money was spent on the development of the market which the customer list represents. [Defendant] is only attempting to sell to this market and [plaintiff's] customer information, in view of its public nature, should not be protected to prevent such competition.

*Abbott Laboratories v. Norse Chemical Corp.*, 33 Wis.2d 445, 468, 147 N.W.2d 529, 541 (1967).

Finally, we consider the ease or difficulty with which the information contained in the Rolodex file could be acquired by others. *See General Business Services, Inc. v. Rouse*, 495 F.Supp. 526 (E.D.Pa.1980). The record shows that mailing lists containing the names of travel agents can be bought by anyone. Permitting appellant to keep a copy of the Rolodex file would be of some benefit to her, in that she would not have to purchase such mailing lists herself. However, the fact that appellant may have the names and addresses of some of Ruesch International's clients does not guarantee that she will get their business. To do that she will have to provide better service at the same price or equal service at a lower price, as Otto Ruesch acknowledged in his testimony.[6]

### IV

In addition to the factors enumerated in the Restatement, the cases which discuss the difference between route and non-route customer lists provide further support for our decision not to grant trade secret protection to the Rolodex file in this case.

"A nonroute customer is one whose demand varies, and who is likely to purchase from several suppliers. Courts have been less prone to give relief in this area because there is no particular relationship developed between a customer and a salesman which is enduring. Thus, contact of a customer by a former employee is not as unfair as in the area of a route salesman whom customers know and have come to depend on." *Abbott Laboratories v. Norse Chemical Corp., supra,* 33 Wis.2d at 467, 147 N.W.2d at 540; *accord, Corroon & Black-Rutters & Roberts, Inc. v. Hosch, supra,* 109 Wis.2d at 298, 325 N.W.2d at 887; *Gary Van Zeeland Talent, Inc. v. Sandas, supra,* 84 Wis.2d at 214, 267 N.W.2d at 248. In his treatise Milgrim points out another reason why, in the absence of a restrictive covenant, courts for the most part have denied trade secret protection to wholesale or nonroute customer lists:

> In the case of a milk or laundry or bakery route driver, the extent of the injunction would normally only preclude him from engaging in a competitive activity for a reasonable time and within a limited geographical area. Assuming, therefore, that he wishes to continue in the same (generally *unskilled*) occupation, the major burden that will be imposed upon him is the requirement that he work in another community. If he wishes to work in the same community, he need only find other work to replace the unskilled route job. On the other hand, a salesman in almost any industry is generally faced with competition and must become well-informed in his field. And, if that field is a reasonably complex one, the salesman's training and preparation to enable him to be effective may require many years of education and experience. Enjoining a departing sales-

---

**6.** See page 298, *supra.*

man from continuing to call upon his former employer's customers might amount to enjoining him from using his skills. In the absence of a restrictive covenant the courts appear reluctant to deny the salesman the opportunity to compete in the field of his "expertise."

R. MILGRIM, *supra* at 2–131 (emphasis in original; footnotes omitted).

Otto Ruesch testified that there was "nothing personal involved in [the foreign exchange service] at all," and that "the only way you get business [is to be] more competitive with ... rates [and] better with the service." Customer loyalty, when it exists, is to the company rather than to a particular employee. Thus, he stated, when clients called and were told that appellant was no longer employed by the company, they simply asked to speak to someone else.

■ Given the "impersonal relationship which existed between appellant and Ruesch International's clients, the nature of the demand for the company's services, and appellant's professional background, we conclude that the Rolodex file is comparable to a non-route or wholesale customer list. Most courts have denied trade secret protection to such lists. *See* R. MILGRIM, *supra* at 2–134 through 2–143. We adopt the majority rule.

■ For all of these reasons we hold that the Rolodex card file at issue in this case was not a trade secret entitled to equitable protection. The trial court's or-

der granting appellee's motion for a preliminary injunction is therefore

*Reversed.*[7]

---

**7.** Appellant also argues that the trial court abused its discretion under Super.Ct.Civ.R. 65(c) by not requiring appellee to post a security bond before granting its motion for a preliminary injunction. Our disposition of the case renders this collateral issue moot. *L'Enfant Plaza Properties, Inc. v. Fitness Systems, Inc.,* 354 A.2d 233, 237–238 (D.C.1976). Likewise, appellant's mo-

tion filed in this court to terminate the no-solicitation part of the injunction because of changed circumstances is denied as moot.

Finally, because of our holding that the entire Rolodex file is not entitled to protection as a trade secret, we need not consider whether the Deak list should be treated differently from the remainder of the Rolodex file.