892 F.2d 1050
 15 U.S.P.Q.2d 1182
 NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
AUTOMATED PACKAGING SYSTEMS, INC., Plaintiffs-Appellant,
v.
SHARP PACKAGING, INC. and Paul Scarberry, Defendants-Appellees.
 No. 89-1419.
 United States Court of Appeals, Federal Circuit.
 Dec. 11, 1989.
 
 Before NIES and PAULINE NEWMAN, Circuit Judges, and EDWARD S. SMITH, Senior Circuit Judge.
 NIES, Circuit Judge.
 
 DECISION
 
 1
 Automated Packaging Systems, Inc., appeals from the order of the United States District Court for the Eastern District of Wisconsin, Automated Packaging Systems, Inc. v. Sharp Packaging, Inc., No. 88-C-0656, slip op. (E.D.Wis. Mar. 17, 1989) (Reynolds, S.J.), denying Automated's request for a preliminary injunction against Sharp Packaging, Inc., and its president, Paul Scarberry (collectively "Sharp"), on state law claims, under the law of Wisconsin, for alleged misappropriation of trade secrets embodied in Automated's pre-opened bag-making machines and in-line (tail end) printing presses, and for alleged tortious interference with a contract between Automated and its former employee, Tony Baker. Automated Packaging sought to enjoin Sharp from installing, operating or disclosing in-line printers delivered to Sharp by Baker's company. The request was later broadened to include certain components of the bag-making machinery. Also, Automated sought to enjoin Sharp from dealing with Baker for a year. After a five-day hearing, the district court ruled (1) that Automated had failed to establish a likelihood of success on the merits of its claims; (2) that it had an adequate remedy at law; and (3) that the harm to Sharp outweighed the harm to Automated. The district court further found that the motion was brought for purposes of harassment and awarded Sharp reasonable attorney fees incurred in defending the preliminary injunction motions as provided in Wisconsin statute section 134.90(4)(c) (1987-88). We affirm the order denying Automated's request for a preliminary injunction and do not rule on the propriety of the award of attorney fees.
 
 OPINION
 
 2
 Automated has failed to persuade us of reversible error, arbitrariness, or other abuse of discretion in the above rulings by the district court. See Roland Machinery Co. v. Dresser Indus., Inc., 749 F.2d 380 (7th Cir.1984) (denial of a preliminary injunction reviewed for an "abuse of discretion").
 
 
 3
 The district court found that Automated presented no credible testimony establishing that the components and processes used by Automated in manufacturing and printing pre-opened bags were trade secrets under Wisconsin statute section 134.90(1)(c)(1987-88). Other than the physical exhibits themselves and arguments of counsel, Automated offered only the conclusory statements of two of its officers that they had trade secrets. Automated's expert (who was, however, not experienced in the field of pre-opened bag-making) did not express an opinion as to whether Automated's alleged trade secrets were generally known in the industry or were used by Sharp. Sharp's experts testified that the components asserted to be trade secrets in the motions were known in the industry.
 
 
 4
 Automated argues that because Sharp did not present evidence that certain specific features of the components were known in the industry, the district court erred in not recognizing those features as trade secrets and in not enjoining their use. As we read the record, Automated's witnesses made only broad conclusory statements that they considered certain components to be trade secrets which the court did not find credible or probative. In his final argument, counsel did attempt to particularlize Automated's claims. But even so limited, the thrust of Automated's argument was that Sharp should be compelled to disconnect the in-line printer from the bag-making machinery, even though Automated admits that their use together in connection with bag making was old in the art and others could figure out how to place the press in line with pre-open bag-making machinery. At that point in the proceeding, Automated appears to have dropped its efforts to preclude use of the printer itself, only asserting, as it does to us, that the "motivation" to use an in-line printer came from Automated's market study and Sharp should not be allowed to use the printer in line.
 
 
 5
 However, that survey is not identified as a misappropriated trade secret in the motions; nor is there evidence that Sharp knew that Automated had made a survey at the time Scarberry started looking for additional presses. Indeed, Scarberry testified he did not know Automated was using in-line presses at that time. On the record before us, we have no basis for overturning the district court's credibility determinations or for finding an abuse of discretion in refusing to require Sharp to separate the in-line printer from the bag-making machine at this time. Neither this court nor the district court opinion forecloses the possibility that Automated may be able to establish some trade secrets at trial.
 
 
 6
 In any event, the district court's findings that Automated had an adequate remedy at law, that Automated would not be irreparably harmed by the denial of an injunction and that the balance of harm favors Sharp are sufficient in themselves to warrant denial of the preliminary injunction. Minuteman, Inc. v. L.D. Alexander, Inc., 147 Wis.2d 842, 859, 434 N.W.2d 773, 780 (Wis.1989). The district court concluded that the injunction Automated sought would put its smaller competitor out of business. Automated argues that Sharp could continue operations with the printer used separately and with removal of modifications from the machinery. However, even if true, Sharp should not be enjoined unless Sharp is unanswerable in damages. See Roland, 749 F.2d at 386. Automated has failed to persuade us that the district court's finding of an adequate remedy at law is clearly erroneous.
 
 
 7
 Automated's argument that it will be seriously harmed if Sharp discloses Automated's trade secrets is inherently true in any trade secret case. That does not, however, relieve a party from clearly identifying and prima facie proving its proprietary rights to obtain a preliminary injunction. Moreover, Sharp need not be enjoined from use in order to effectuate that objective. Even assuming some components are trade secrets, we know of no authority which imposes an obligation on the district court sua sponte to consider fashioning a preliminary injunction remedy with respect to an individual feature where the movant does not so request.
 
 
 8
 We have considered Automated's arguments with respect to enjoining Sharp from working with Baker for a year and find them unpersuasive. Baker's contract was not and, under applicable Ohio law, admittedly could not contain a covenant not to compete. Baker thus was entitled to utilize his general knowledge and experience in his work for Sharp. In any event, the court specifically noted the absence of any evidence that Sharp induced Baker to breach his agreement, if a breach occurred. We are unpersuaded that the district court erred in finding on the present record that Automated was not likely to be successful on its claim of tortious interference with Baker's contract, or otherwise abused its discretion in denying the requested injunction.
 
 Attorney Fees
 
 9
 The district court found that Automated's preliminary injunction motion was made in bad faith, for the purpose of injuring Sharp and eliminating Sharp as a competitor in the pre-opened bag market. Automated seeks review claiming the award--the amount of which has not been determined--is a final appealable order collateral to the merits of the action. However, we disagree that an independent basis exists for appeal of the award. While we may review rulings pendant to the denial of the preliminary injunction, we find the ruling here not one which compels our attention at this time. We therefore decline to exercise jurisdiction and leave this issue for review, should it be necessary, at a later date.
 
 
 10
 Sharp moves for an award of attorneys' fees for defending this appeal pursuant to Rule 38 of the Federal Rules of Appellate Procedure. Because we find that this appeal is not frivolous, we deny Sharp's motion.
 
 
 11
 PAULINE NEWMAN, Circuit Judge, dissenting.
 
 
 12
 I respectfully dissent from the holding that Automated has not shown likelihood of success in proving that it possessed proprietary information and trade secrets, and in proving that this information had been misappropriated.
 
 
 13
 The information obtained by Sharp through Tony D. Baker, an ex-employee of Automated who occupied a position of trust, was of substantial economic value, and was the subject of sizable payments to Baker. It was established by generally uncontroverted testimony that the details of Automated's equipment and process were not known outside of Automated. Baker's modifications of Sharp's equipment to incorporate these details meet the standard for protected information set by Wisconsin law. Wis.Stat. § 134.90 Uniform Trade Secrets Act:
 
 
 14
 (1) Definitions.
 
 
 15
 (c) "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique or process to which all of the following apply:
 
 
 16
 1. The information derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use.
 
 
 17
 2. The information is the subject of efforts to maintain its secrecy that are reasonable under the circumstances.
 
 
 18
 (2) Misappropriation.
 
 
 19
 No person, including the state, may misappropriate or threaten to misappropriate a trade secret by doing any of the following: ...
 
 
 20
 (b) Disclosing or using without express or implied consent a trade secret of another if the person did any of the following: ...
 
 
 21
 2. At the time of disclosure or use, knew or had reason to know that her or she obtained knowledge of the trade secret through any of the following means: ...
 
 
 22
 b. Acquiring it under circumstances giving rise to a duty to maintain its secrecy or limit its use.
 
 
 23
 c. Deriving it from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use.
 
 
 24
 (3) Injunctive Relief.
 
 
 25
 1. A court may grant an injunction against any person who violates sub. (2)....
 
 
 26
 Automated described several areas in which Baker rebuilt or modified Sharp's equipment and incorporated specific details of modifications that Automated had created through its engineering and commercial efforts, including: the specific design and mounting of the heater bar assembly; replacement of the nip roll for the input, and its placement to improve tension control; the registration eye and its connection to the perforating knife and the heater bar; the hot knife assembly; the mechanism to permit adjustment of the zinger function; modifications on the folder and rewinder; certain printing modifications; and the internal marketing study. Taken together, these modifications were of substantial commercial value.
 
 
 27
 There was no significant dispute that the modifications made by Baker for Sharp included the detailed information that Baker knew Automated was using in its own operations. Looking specifically, for example, at Automated's heater bar, there was uncontradicted testimony as to its several differences from commercially available heater bars, including the heater bar that Sharp used until Baker replaced it with that of Automated. Appellant's expert Hobbs testified how the commercially available Ro-An heater bar differed from that of Automated; Scarberry and Kopinsky testified similarly for Sharp. Automated's witness Lerner testified about the Scheldahl machine's heater bars, and explained how Automated designed its heater bar and increased its efficiency.
 
 
 28
 Scarberry admitted that the heater bars and their mounting provided by Baker were different from those that Sharp had previously been using. Baker testified that he modified Sharp's machines to replace the heater bars with the specific design of the Automated heater bar plus its mounting and placement and driving mechanism. Scarberry admitted that he had operated the equipment at Sharp for over three years before the Automated designs were installed by Baker.
 
 
 29
 The district court plainly erred in holding that there were no trade secrets because the general process was known. It is not the general process that is asserted by Automated as its trade secrets; it is the specific details. For these details, the testimony was generally uncontroverted that they were not known to others, were proprietary to Automated, had advantages over commercially available designs, were obtained by Baker under circumstances that gave rise to a duty to maintain their secrecy or limit their use, and were installed by Baker in the Sharp machines at Scarberry's request. This far exceeds the criterion of Baker's permissible use of his "experience and intellectual development". Gary Van Zeeland Talent, Inc. v. Sandas, 84 Wis.2d 202, 214, 267 N.W.2d 242, 248 (Wis.1978), cited by the district court for this proposition, held that a customer list which was no more than a Christmas card list was not a trade secret and was at best of "transitory value," id. at 216, 267 N.W.2d at 250; however, nowhere did the court hold that trade secrets and proprietary processes are not protected from misappropriation. No Wisconsin statutory or case law authorizes Baker to sell to Sharp the details of Automated's process and equipment, details learned by Baker during his employment at Automated.
 
 
 30
 It was undisputed that Baker was a senior employee at Automated with access to the entire body of Automated's manufacturing and commercial information. He worked as a plant manager and plant engineer at Automated. He had the engineering capability of exploiting this information. The panel majority appears to consider Baker's "Sensitive Position Agreement" with Automated as of no significance. It is inappropriate to assume that the one-year restraint in the contract, or Baker's express contractual undertaking with respect to Automated's confidential information, is of no legal significance, or to imply that Ohio law authorizes Baker's actions. Whatever the "general knowledge and experience" that the majority states Baker is entitled to use, this does not include the confidential and proprietary information of another.
 
 
 31
 A commercial society can not survive if theft of the property of another is condoned, whether the property be tangible or intangible. See Wis.Stat. § 134.90, supra. A request for preliminary injunction in the area of proprietary commercial information including intangible property requires particular sensitivity by the court. At risk is not only the harm done by condoning the illicit use of the property of another; there is also the risk of further disclosure of the information, such that adequate remedy may be rendered impossible. Further, Automated does not ask that Sharp be put out of business, as the district court suggests. The appropriate remedy would be simply to return Sharp to the position it was in before Baker installed Automated's technology in Sharp's machines. Whatever the relative size of Automated and Sharp, I know of no policy that requires the larger enterprise to accept conversion of its technological property, simply because it was taken by a smaller enterprise.
 
 
 32
 The cause is still to be tried. However, the district court erred, as a matter of law, in holding that because the general process was known, the technological details were not protectible. The court also erred in its view of permissible restraints on trusted employees. These legal errors require appellate correction, whether or not we agree with the district court as to the requested injunction pendente lite. The district court not only erroneously decided these substantive points against Automated, but also imposed a sanction on Automated for requesting the preliminary injunction. This action reinforces the view that the court misperceived the premises of Automated's action, for Wisconsin statute § 134.90(3), quoted supra, specifically authorizes injunctive relief for misappropriation of a trade secret.
 
 
 33
 Our failure to correct the errors embodied in the court's analysis diminishes the chance of a correct application of law at full trial. Thus, to the extent that my colleagues on this panel may believe that by affirming denial of the preliminary injunction they are simply postponing a just determination of the issues, it seems to me that they are assuring the denial of justice.